**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM O'MARA,** *et al.*, | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CREATIVE WASTE SOLUTIONS, LLC,** | : | **No. 19-2021** |
| **d/b/a B&L DISPOSAL SERV.,** *et al.*, | : | |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                     MAY 14, 2020

Plaintiffs William O'Mara and Damien Hunter brought this suit against Defendants—

Creative Waste Solutions, LLC d/b/a B & L Disposal Services, Lou Bizzari, and Vanessa Lake—

for allegedly failing to pay them overtime compensation in accordance with the Fair Labor

Standards Act (FLSA)), 29 U.S.C. § 201 *et seq.* and the Pennsylvania Minimum Wage Act

(PMWA), 43 P.S. § 333.100 *et seq.*[1]  After engaging in the discovery process and settlement

negotiations, the parties reached a settlement agreement to resolve Plaintiffs' claims.  The parties

now seek the Court's approval of their proposed settlement agreement.  After the Court ordered

the parties to submit supplemental briefing and evidentiary documentation in support of their joint

motion seeking approval of the proposed settlement agreement, the parties submitted a renewed

joint motion and revised proposed settlement agreement.  For the following reasons, the Court

approves the parties' revised proposed settlement agreement.

---

[1]     As reflected in the amended complaint, Mr. O'Mara released his claim under the PMWA.  Only
Mr. Hunter's PMWA claim remains.

## FACTUAL AND PROCEDURAL BACKGROUND

B & L is a disposal service company owned and operated by Mr. Bizzari and managed and operated by Ms. Lake. Defendants hired Mr. O'Mara as a non-exempt driver in July 2015 and Mr. Hunter as a non-exempt helper in January 2012. Pursuant to the terms of their employment, Mr. O'Mara operates the trash truck and both Mssrs. O'Mara and Hunter pick up trash. Despite allegedly working numerous overtime hours, Plaintiffs assert that Defendants failed to properly compensate them for the hours that they worked in excess of 40 in any given workweek.

### A. Mr. O'Mara's Claims

During 2016 and the first 2 weeks of 2017, Mr. O'Mara worked 5 days per week and was paid a fixed daily rate of $180.00 per day. After analyzing the available records concerning the amount of hours Mr. O'Mara worked,[2] his attorney determined that Mr. O'Mara worked, on average, 45.6 hours per week during this time period.[3] Mr. O'Mara reasoned that because he was compensated $900.00 for the 45.6 hours he worked per week, his regular rate during this time period amounted to $19.73 per hour. Based on this calculation, Mr. O'Mara believed that he should have been paid a "half rate"[4] of approximately an additional $9.87 for each of the 5.6 overtime hours he worked per week, totaling to $55.26 in unpaid overtime compensation per

---

[2]     There is no data concerning the hours Mr. O'Mara worked in 2016. Accordingly, Mr. O'Mara's attorney analyzed only the portions of the 2017 records which indicated the hours that he worked.

[3]     Mr. O'Mara's recollection is consistent with this analysis.

[4]     Pursuant to the FLSA, non-exempt employees must be compensated at a premium "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This Memorandum refers to the compensation owed for overtime hours worked in addition to the regular rate as the "half rate."

2

week.[5] Accordingly, Mr. O'Mara contends that for the 36 weeks included in his 3-year statute of limitations window in which he was paid a fixed daily rate, Defendants failed to pay him $1,989.47.

After that 3-year period, Defendants began paying Mr. O'Mara an hourly rate of $22.50 per hour. Mr. O'Mara initially claimed 116 unpaid hours in which he was not compensated his regular or half rate (*i.e.*, his premium overtime rate) and 159 hours in which he was not compensated for his half rate, totaling to $5,703.75 in unpaid additional overtime compensation. After reviewing and analyzing the records concerning his employment during this time period, however, Mr. O'Mara contends that Defendants instead may have failed to pay him his half rate for 211 hours he worked overtime, totaling to $2,373.75.

In all, Mr. O'Mara asserts that Defendants failed to pay him between $4,363.22 to $7,693.22 in overtime compensation. Taking into consideration liquidated damages, Mr. O'Mara contends that his total potential damages fall between $8,726.44 and $15,386.44.

### B. Mr. Hunter's Claims

Defendants initially paid Mr. Hunter a fixed daily rate of $90.00 per day. Mr. Hunter contends that he was compensated at only the regular rate for the 5 overtime hours he worked per week during this time period. Using the same calculation detailed above, Mr. Hunter contends that he made an hourly rate of $10.00 during this time period, meaning that he should have been compensated with an additional $5.00 per overtime hour to account for his half rate. Accordingly, Mr. Hunt contends that he should have been compensated an additional $25.00 per week during the 36 weeks he was paid a fixed daily rate, totaling to $900.00 in unpaid overtime compensation.

---

[5] Assuming only for the purposes of this calculation that Mr. O'Mara worked 5.6 overtime hours per week, the Court's computations show that Mr. O'Mara should have been paid an additional $55.27 per week, not $55.26 per week. Regardless, the one cent difference is immaterial to the Court's analysis.

3

Again, after the 3-year period, Defendants began paying Mr. Hunter an hourly rate of $11.25 per hour.  Mr. Hunter alleges that Defendants failed to compensate him in any way for his 20 hours of overtime work completed during that time period in which he was paid an hourly rate. Accordingly, he contends that Defendants should have paid him an additional $337.50 in overtime compensation.  In total, Mr. Hunter asserts that Defendants failed to pay him $1,237.50.  Factoring in liquidated damages, Mr. Hunter contends that his total potential damages are $2,475.00.

### C.  Procedural History

Mssrs. O'Mara and Hunter initiated this suit for Defendants' allegedly failing to compensate them for overtime hours worked in accordance with the FLSA and PMWA.  Because Mr. O'Mara released his claim under the PMWA, Plaintiffs amended their complaint to remove that claim.  Although the amended complaint describes this suit as a collective action pursuant to 29 U.S.C. § 216(b), Plaintiffs ultimately did not seek FLSA conditional certification.  Defendants filed an answer to the amended complaint, generally denying most of Plaintiffs' allegations and asserting several affirmative defenses.  After engaging in discovery and settlement negotiations, the parties reached an agreement on Plaintiffs' individual claims.

The parties submitted to the Court a joint motion to approve their proposed settlement agreement and stipulation for dismissal with prejudice.  The Court then ordered the parties to submit supplemental briefing and/or accompanying evidentiary documentation to demonstrate the reasonableness of the attorneys' fees, to describe in detail how the parties reached their proposed award amounts, and to assess whether the confidentiality provision included in the proposed settlement agreement perhaps frustrated the implementation of the FLSA.  The parties provided additional information and documentation in the renewed motion for settlement approval and

4

submitted a revised proposed settlement agreement which removed the confidentiality provision that the Court had questioned.

### D. Terms of the Revised Proposed Settlement Agreement

The parties' revised proposed settlement agreement provides that Defendants will pay Mr. O'Mara $8,000, Mr. Hunter $2,000, and their attorney $4,000. In exchange, Mssrs. O'Mara and Hunter agree to "release Defendants of any from any and all claims they may have, known or unknown, under the Fair Labor Standards Act ('FLSA') and/or the Pennsylvania Minimum Wage Act ('PMWA'). This release specifically: includes all claims which were raised in the Lawsuit, as well as all claims for attorneys' fees incurred in connection with the Lawsuit." Proposed Settlement Agreement at ¶ 6 (Doc. No. 25-1).

## LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). An employer who violates the FLSA's overtime wage provisions, codified at 29 U.S.C. § 207, may be liable to affected employees "in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216.

"To safeguard employee rights made mandatory by the statute, a majority of courts have held that bona fide FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit." *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015). In the absence of guidance from the Third Circuit Court of Appeals, courts in this Circuit have routinely employed the requirements set forth in *Lynn's*

5

*Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982), in reviewing proposed compromises or settlements. *Bettger*, 2015 WL 279754, at *3 (collecting cases). Following *Lynn's Food Stores*, a district court should approve a proposed settlement between the parties if it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355.

To be considered a resolution of a bona fide dispute, the proposed settlement must reflect a reasonable compromise over factual issues actually in dispute, rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *see Creed v. Benco Dental Supply Co.*, No. 12-1571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (noting that a dispute is "bona fide" when it involves "'factual issues' rather than 'legal issues such as the statute's coverage and applicability'") (quoting this Court's opinion in *Lignore v. Hosp. of Univ. of Pa.*, No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007)). "In determining whether a compromise is fair and reasonable, courts in this Circuit consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015) (collecting cases).

## DISCUSSION[6]

With this framework in mind, the Court analyzes whether the revised proposed settlement agreement (1) resolves a bona fide dispute over the applicable FLSA provisions; (2) is fair and

---

[6]     Because judicial approval of the settlement of PMWA claims is not required, the parties do not seek approval of the settlement agreement as it pertains to Mr. Hunter's PMWA claims. *See Weismantly v. Jali*, No. 13-1087, 2015 WL 1866190, at *1 (W.D. Pa. Apr. 23, 2015) (noting that although the parties sought approval of the settlement of the plaintiff's FLSA claims, the parallel state law claims "d[id] not appear to require any sort of Court approval to be lawfully settled").

reasonable to Mssrs. O'Mara and Hunter; and (3) does not frustrate the implementation of the FLSA.

## I.      Whether the Settlement Agreement Resolves a Bona Fide Dispute

First, the Court considers whether the proposed settlement terms reflect the existence of a bona fide dispute between the parties. "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

Here, the parties genuinely dispute whether Plaintiffs were properly compensated for their alleged overtime hours worked in accordance with the FLSA. Despite Plaintiffs' claims that they were not properly compensated for overtime hours worked, Defendants maintain that Plaintiffs have been fully compensated for any and all hours worked. Moreover, Defendants dispute that Plaintiffs worked any overtime hours during any given workweek prior to January 1, 2017. In addition to denying the allegations, Defendants also asserted several affirmative defenses. *See Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 778 (E.D. Pa. 2016) (demonstrating a bona fide dispute in part by assessing the defendant's general denial of the plaintiff's allegations of wrongdoing and the defendant's assertion of affirmative defenses). As such, the Court is satisfied that the proposed settlement resolves a bona fide dispute between the parties.

## II.     Whether the Settlement Agreement is Fair and Reasonable to Plaintiffs

Second, the Court considers whether the proposed settlement is fair and reasonable to Mssrs. O'Mara and Hunter. A court's analysis of the fairness and reasonableness of a settlement agreement usually depends on the following nine factors enumerated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975): "(1) the complexity, expense and likely duration of the litigation; (2) the

7

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-2663, 2017 WL 2215264, at *2 (E.D. Pa. May 18, 2017) (citing *Girsh*, 521 F.2d at 157). However, "at least some of the *Girsh* factors appear to be little help, if not irrelevant, in the single-plaintiff context." *Howard*, 197 F. Supp. 3d at 777 n.1. "Thus, even though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair." *Id.* (quoting *Kraus*, 155 F. Supp. 3d at 523 n. 3).

Here, the parties exchanged extensive records and information through the discovery process. As noted, Mr. O'Mara contends that Defendants failed to compensate him for $4,363.22 to $7,693.22 in overtime compensation, plus an equal amount in liquidated damages. Mr. Hunter contends that Defendants failed to pay him $1,237.50 for his overtime work, plus an equal amount in liquidated damages. Moreover, Mssrs. O'Mara and Hunter reportedly are aware of the risk that the asserted defenses might prevail, which would result in potentially limiting or entirely eliminating their damages awards. Based on the discovery as completed, Plaintiffs' wage calculations described above, and Plaintiffs' knowledge of the risk of establishing damages, the Court finds that Mssrs. O'Mara and Hunter's decisions to accept $8,000 and $2,000 respectively, exclusive of attorneys' fees, are reasonable.

8

Concerning the attorneys' fees and cost award, the proposed settlement agreement seeks to award $4,000 in attorneys' fees and costs, or 28.6% of the total recovery. The FLSA mandates that a district court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The prevailing method used by courts in this Circuit for wage and hour cases is the percentage-of-recovery method. *Kraus*, 155 F. Supp. 3d at 533 (citing *Keller v. TD Bank*, No. 12-5964, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)). This method awards a fixed portion of the settlement fund to counsel. *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014). When evaluating a proposed attorneys' fees award under the percentage-of-recovery method, the Court is to consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved;[7] (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Kraus*, 155 F. Supp.3d at 533 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2003)). Even so, "'[e]ach case is different, and in certain cases, one factor may outweigh the rest.'" *Id.* (quoting *Gunter*, 223 F.3d at 195 n.1).

Here, because this is a private action, only two people will benefit from the settlement fund. Plaintiffs have not objected to any portion of the settlement agreement, including the fee proposal. Moreover, Plaintiffs' attorney has professionally concentrated on employment litigation since 2006 and has presented programs at continuing legal education seminars concerning the FLSA.

---

[7]     In analyzing this factor, courts have considered skill, efficiency, and experience of plaintiffs' counsel. *See, e.g.*, *Altnor v. Preferred Freezer Serv. Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016); *Howard*, 197 F. Supp. 3d at 780.

Accordingly, the Court finds that Plaintiffs' attorney has sufficient experience in this area of law and, given the modest number of hours spent litigating this case, has worked efficiently to settle the case.

Next, the complexity and duration of the litigation is, at most, neutral. No dispositive motions have been filed and the parties have not raised any novel legal issues. Concerning the duration of the litigation, over 10 months elapsed between the date when the case was filed and the date when the parties initially requested the Court's approval of their first proposed settlement agreement. As part of those activities, Plaintiffs' attorney reportedly spent more than 10 hours preparing and responding to discovery requests, preparing for depositions, reviewing and analyzing documents, preparing damages analyses, preparing pleadings, engaging in client conferences, engaging in settlement negotiations, and preparing documents related to the settlement and its approval. Angeli Murthy Aff. at ¶ 2 (Doc. No. 25-2). As for risk of no damages to be recovered and, thus, no attorneys' fees received, there exists a legitimate possibility that Plaintiffs would not achieve any damages. Because Plaintiffs entered into a contingent fee contract with their attorney, the risk to counsel of nonpayment is certainly present. Finally, courts typically approve attorneys' fees awarded in FLSA settlement agreements ranging "from roughly 20-45%." *Howard*, 197 F. Supp. 3d at 782 (quoting *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases)); *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002)) (noting that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund"). The percentage of recovery proposed here, 28.6%, falls at the lower end of this generally accepted range.

Although it is not dispositive, the Court notes that the requested amount is also less than the lodestar cross-check amount. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d

Cir. 2005) (noting that the lodestar method may be used as a "cross-check" for the percentage-of-recovery method). As a result, the Court approves the proposed $4,000 award for attorneys' fee and costs.

Therefore, the Court finds the settlement agreement, including the proposed attorneys' fee and cost award, to be fair and reasonable.

**III.     Whether the Settlement Agreement Frustrates the Implementation of the FLSA**

Finally, the Court considers whether the settlement agreement as proposed frustrates the implementation of the FLSA in the workplace.

First, a reviewing district court is to guard against expansive, all-encompassing waiver and release provisions. *See, e.g.*, *Kraus*, 155 F. Supp. 3d at 532-33; *Bettger*, 2015 WL 279754, at **8-10. Because the release provision here is sufficiently tailored to release Defendants from Plaintiffs' claims brought under the FLSA and PMWA, the Court sees no issue with the waiver and release provision contained in the revised proposed settlement agreement

Second, the Court notes that the settlement agreement initially proposed to the Court contained a confidentiality provision. There exists a "broad consensus" that an FLSA settlement agreement ought *not* be kept confidential. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 300583, at *3 (D.N.J. Feb. 1, 2012) (collecting cases). This is because silencing employees who have vindicated their rights pursuant to the FLSA "thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010). Courts have approved only "limited" or "narrowly drawn" confidentiality clauses that do not prohibit plaintiffs from discussing settlement agreements with, at the very least, the defendants' employees. *Mabry*, 2015 WL 5025810, at *3 (disapproving a confidentiality clause that allowed

11

the plaintiff to disclose the terms of the agreement with only his "spouse, attorney, and/or accountant"); *cf. McGee*, 2014 WL 2514582, at \*3 (approving a confidentiality clause which prohibited the plaintiff from speaking with the media but otherwise permitted the plaintiff to share the terms of the settlement agreement with "friends, family, employees, and individuals not affiliated with the media"); *Chickie & Pete's, Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at \*3 (E.D. Pa. Mar. 7, 2014) (approving a confidentiality clause which did not "prohibit Plaintiffs from discussing this matter with anyone, but only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media").

As noted, upon receipt of the initial settlement agreement the Court ordered the parties to submit supplemental briefing in part to assess whether the confidentiality provision included in that first settlement agreement proposal frustrated the FLSA's implementation. In response, the parties sensibly elected to remove the confidentiality provision in its entirety. In its final format, the FLSA is not frustrated by the inclusion of a greatly modified confidentiality provision in the settlement agreement.

Finally, for the sake of clarity, the Court emphasizes that the settlement agreement does not bind or operate as a release of any claim or legal position by any persons except Mssrs. O'Mara and Hunter.[8]

Therefore, the Court finds that the revised proposed settlement agreement does not frustrate the implementation of the FLSA.

---

[8] Although Plaintiffs' amended complaint noted that this suit was initially intended to become a collective action, Plaintiffs ultimately did not seek conditional certification, instead settling only their individual claims. Accordingly, the Court stresses that only Mssrs. O'Mara and Hunter are bound to the releases agreed to in this settlement agreement.

CONCLUSION

For the foregoing reasons, the Court approves the parties' revised proposed settlement agreement.   The Court grants the parties' renewed motion for Court approval of the revised proposed settlement agreement and stipulation for dismissal with prejudice.   An appropriate order follows.


BY THE COURT:


GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE